# REDACTED

DAVID CHIU, State Bar #189542
City Attorney
JAMES F. HANNAWALT, State Bar #139657
Acting Chief Trial Deputy
S. PATRICK KELLY, State Bar #275031
Deputy City Attorney
Fox Plaza
1390 Market Street, Sixth Floor
San Francisco, California 94102-5408
Telephone:     (415) 554-3856
Facsimile:      (415) 554-3837
E-Mail:          patrick.kelly@sfcityatty.org

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAMERON VINCENT,<br><br>        Plaintiff,<br><br>        vs.<br><br>CITY AND COUNTY OF SAN FRANCISCO and DOES 1-25,<br><br>        Defendants. | Case No. 20-cv-03129-SK<br><br>**DEFENDANT CITY AND COUNTY OF SAN FRANCISCO'S MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date:     December 11, 2023<br>Hearing Judge:    Hon. Sallie Kim<br>Time:              9:30 a.m.<br>Place:             Courtroom C, 15th Floor<br><br>Trial Date:        March 12, 2024 |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

NOTICE OF MOTION AND MOTION ............................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 3

    I.       INTRODUCTION ............................................................................... 3

STATEMENT OF FACTS .................................................................................................. 4

    I.       Plaintiff's Claims ............................................................................... 4

    II.      Plaintiff's Medical History and Alleged Harms ....................................... 5

            A.      There Is No Evidence that Lack of Sunlight Caused Plaintiff's Alleged Harms .......................................................................................... 5

            B.      Plaintiff Had a Single Vitamin D Test and Normal Calcium Levels ........... 6

            C.      Plaintiff Had a History of Depression Stemming Back to at Least 2007 that Improved over Time in San Francisco County Jail ........................... 7

            D.      There Is No Medical Evidence Plaintiff Has or Had Osteoporosis ............. 8

            E.      There Is No Medical Evidence Plaintiff Has or Had Low Testosterone ..... 9

    III.     Plaintiff Had Medically Sufficient Access to Light ................................. 9

LEGAL STANDARD ....................................................................................................... 10

ARGUMENT ................................................................................................................... 11

    I.       Lacking Evidence of Causation of His Alleged Harms, Plaintiff's Fourteenth Amendment Claim Fails as a Matter of Law ....................................... 11

            A.      Having Admitted He Has No Evidence of Causation, Plaintiff's Claim Fails .......................................................................................... 13

            B.      Plaintiff Has No Admissible Evidence on Medical Causation .................. 13

            C.      The Admissible Evidence Makes Clear Plaintiff Has No Evidence Showing a Lack of Sunlight Caused Plaintiff's Only Alleged Harms ....... 16

            D.      The Evidence Shows This Case Is Completely Distinct from the *Brackens* Case ............................................................................... 17

    II.      Punitive Damages Are Unavailable ..................................................... 19

CONCLUSION ................................................................................................................ 19

**TABLE OF AUTHORITIES**

**Federal Cases**

*999 v. C.I.T. Corp.*
   776 F.2d 866 (9th Cir. 1985) ........................................................................................13

*Anderson v. Liberty Lobby, Inc.*
   477 U.S. 242 (1986)......................................................................................................10

*Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g*
   57 F.3d 1190 (3d Cir. 1995) ........................................................................................14

*Bayes v. Biomet, Inc.*
   2020 WL 5848068 (E.D. Mo. Oct. 1, 2020) ..................................................................5

*Bell v. Wolfish*
   441 U.S. 520 (1979)......................................................................................................11

*Brackens v. City and Cnty. of San Francisco*
   2023 WL 6847576 (N.D. Cal. Oct. 17, 2023) ...................................................3, 9, 11, 12, 17, 18

*Brown v. Johnson & Johnson*
   2019 WL 2577296 (E.D. Cal. June 24, 2019) ..............................................................15

*Burleson v. Samson*
   2007 WL 2688840 (E.D. Cal. Sept. 13, 2007)..............................................................16

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986)......................................................................................................10

*City of Newport v. Fact Concerts, Inc.*
   453 U.S. 247 (1981)......................................................................................................19

*Coeur D'Alene Tribe of Idaho v. Hammond*
   384 F.3d 675 (9th Cir. 2004) .......................................................................................19

*Cottle v. Superior Ct.*
   3 Cal. App. 4th 1367(1992) .........................................................................................14

*Crawford-El v. Britton*
   523 U.S. 574 (1998)......................................................................................................10

*Demery v. Arpaio*
   378 F.3d 1020 (9th Cir. 2004) .....................................................................................11

*Dhillon v. Princess Cruise Lines, Ltd.*
   2022 WL 504560 (C.D. Cal. Feb. 18, 2022) ...............................................................15

*Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*
   873 F.2d 229 (9th Cir. 1989) .......................................................................................18

*Fleming v. Lind-Waldock & Co.*
   922 F.2d 20 (1st Cir. 1990) ................................................................................................12

*Hawes v. Pac. Gas & Elec. Co.*
   2018 WL 5270499 (C.D. Cal. June 25, 2018) ...................................................................15

*In re Carney*
   238 F.3d 415 (5th Cir. 2001) .............................................................................................13

*Inland Empire Waterkeeper v. Corona Clay Co.*
   17 F.4th 825 (9th Cir. 2021) .............................................................................................13

*James River Ins. Co. v. Rapid Funding, LLC*
   658 F.3d 1207 (10th Cir. 2011) .........................................................................................14

*Jones v. Ortho Pharm. Corp.*
   163 Cal. App. 3d 396 (1985) .............................................................................................14

*Lawson v. Lawson*
   2015 WL 5474763 (D. Nev. Sept. 17, 2015) ...................................................................16

*Lockett v. Cnty. of Los Angeles*
   977 F.3d 737 (9th Cir. 2020) .............................................................................................17

*Navajo Nation v. U.S. Forest Service*
   535 F.3d 1058 (9th Cir. 2008) ...........................................................................................12

*Norbert v. City and Cnty. of San Francisco*
   10 F.4th 918 (9th Cir. 2021) ...........................................................................3, 4, 11, 12, 13

*Parklane Hosiery Co. v. Shore*
   439 U.S. 322 (1979).............................................................................................................18

*Pickern v. Pier 1 Imports (U.S.), Inc.*
   457 F.3d 963 (9th Cit. 2006)...............................................................................................12

*Sanchez v. Master Prot., LP*
   2022 WL 2092995 (C.D. Cal. May 4, 2022) ...................................................................15

*Stephen v. Ford Motor Co.*
   134 Cal. App. 4th 1363 (2005) .........................................................................................14

*Syverson v. IBM*
   472 F.3d 1072 (9th Cir. 2007) ...........................................................................................18

*United States v. Mendoza*
   464 U.S. 154 (1984)............................................................................................................19

*United States v. Smith*
   640 F.3d 358 (D.C. Cir. 2011)...........................................................................................14

*United States v. York*
   600 F.3d 347 (5th Cir. 2010) ............................................................................13, 14

*Vazquez v. Cnty. of Kern*
   949 F.3d 1153 (9th Cir. 2020) ...............................................................................11

*Walker v. Contra Costa Cnty.*
   2006 WL 3371438 (N.D. Cal. Nov. 21, 2006) .......................................................15

*Warren v. Cybulski*
   556 B.R. 429 (N.D. Cal. 2016) ..............................................................................13

*Wasco Products, Inc. v. Southwall Tech. Inc.*
   435 F.3d 989 (9th Cir. 2006) .................................................................................12

*Yamagiwa v. City of Half Moon Bay*
   2007 WL 831804 (N.D. Cal. Mar. 19, 2007).........................................................14

*Yousefian v. City of Glendale*
   779 F.3d 1010 (9th Cir. 2015) ...............................................................................17

**Rules**
Federal Rules of Civil Procedure
   26(a)(2)(A)...............................................................................................................5
   56 ........................................................................................................................1, 10
   56(e) .......................................................................................................................10

Federal Rules of Evidence
   701 ..............................................................................................................13, 14, 15
   702 ..........................................................................................................................13

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFF AND HIS COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 11, 2023, at 9:30 a.m., or as soon thereafter as the matter may be heard by the Honorable Sallie Kim in Courtroom C, 15th Floor, of the United States District Court for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, Defendant City and County of San Francisco (the "City"), will and hereby does move for summary judgment in its favor pursuant to Rule 56 of the Federal Rules of Civil Procedure.

This motion is made on the ground that Plaintiff lacks any evidence that the condition of confinement he complains of (lack of sunlight) caused any of the three harms he complains of (low testosterone, osteoporosis, and depression), which is a necessary element of a due process claim under the Fourteenth Amendment. Indeed, Plaintiff ***admitted*** in responses to Requests for Admission that he has no such evidence. Based on these binding admissions alone, summary judgment should be granted to the City. In addition, Plaintiff's deposition testimony and responses to interrogatories demonstrate that he has no evidence of causation. Further, Plaintiff does not have the expert testimony necessary to establish medical causation and thus lacks admissible evidence necessary to support his due process cause of action. Finally, the medical evidence that exists – namely the opinions of the City's experts based on Plaintiff's medical records – demonstrates that Plaintiff was *not* harmed by the challenged condition of confinement. There is no medical evidence Plaintiff suffered from two of the three harms he alleges, and the third, depression, *improved* over the time Plaintiff was incarcerated in San Francisco County Jail, with Plaintiff informing providers that he was ████████████████. The City's expert opined, after reviewing Plaintiff's medical records, that "Vincent did not suffer any adverse effects due to his lack of sun exposure," and Plaintiff has adduced no medical evidence to refute that.

As Plaintiff cannot prove an underlying constitutional violation, Plaintiff's *Monell* claim fails. The City is additionally entitled to summary judgment on punitive damages – which are unavailable from the City, the only Defendant the Plaintiff named.

///

This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities attached hereto, the declarations, papers and other evidence filed herewith, and such other argument or evidence that may be presented to the Court.

Dated:  October 23, 2023

> DAVID CHIU
> City Attorney
> JAMES F. HANNAWALT
> Acting Chief Trial Deputy
> S. PATRICK KELLY
> Deputy City Attorneys
>
>
> By: */s/ S. Patrick Kelly*
> S. PATRICK KELLY
>
> Attorneys for Defendant
> CITY AND COUNTY OF SAN FRANCISCO

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

Plaintiff Cameron Vincent's First Amended Complaint ("FAC") alleges a Fourteenth Amendment due process cause of action and a related *Monell* claim and seeks damages. The sole defendant named is the City and County of San Francisco. The only condition of confinement challenged is lack of sunlight. In order to state a cause of action for a Fourteenth Amendment due process violation in a jail conditions case, Plaintiff "must … demonstrate that the challenged conditions produce a harm or disability." *Norbert v. City and Cnty. of San Francisco*, 10 F.4th 918, 934–35 (9th Cir. 2021) (citation and internal quotation marks omitted). The FAC alleges three harms allegedly caused by the challenged condition of confinement: 1) low testosterone, 2) osteoporosis, and 3) depression. Plaintiff confirmed in deposition and discovery responses that these are the only three harms he alleges. Plaintiff admitted – in response to Requests for Admission – that he has no evidence that lack of sunlight or a Vitamin D deficiency caused any of the alleged harms. Plaintiff has no experts to opine on medical causation, a prerequisite to proving medical causation. Additionally, the City's experts clearly opine that based on epidemiological literature and a review of Plaintiff's medical records, the alleged lack of sunlight *did not* cause the alleged harms to Plaintiff. Without evidence of causation of harm, Plaintiff's Fourteenth Amendment claim fails as a matter of law. Without an underlying constitutional violation, the *Monell* claim fails. Summary judgment should be granted to the City.

Last Tuesday, this Court issued its Findings of Fact and Conclusions of Law in *Brackens v. City and Cnty. of San Francisco*, 2023 WL 6847576 (N.D. Cal. Oct. 17, 2023) ("*Brackens* Order"). That injunctive class action is different from Plaintiff's individual suit for damages here, and the evidence in the *Brackens* action did not address Plaintiff's alleged harms or his medical records or history. Plaintiffs in the *Brackens* action introduced evidence, including medical records, that they experienced harms and introduced expert testimony that the lack of sunlight caused those alleged harms. *Brackens* Order at 55–56.[1] No such evidence has been produced by Plaintiff here. Here,

---

[1] The City pincites the *Brackens* Order using the PACER pagination.

Plaintiff has admitted he has no evidence a lack of sunlight or Vitamin D deficiency caused his alleged harms, and he has adduced no expert testimony whatsoever. This case is not *Brackens*, and on the record adduced here, the City should be granted summary judgment.

**STATEMENT OF FACTS**

## I.    Plaintiff's Claims

Plaintiff filed his initial complaint in this matter on May 6, 2020, after this Court entered its preliminary injunction in the *Norbert* action. ECF No. 1. After his release from custody, Plaintiff filed his FAC on December 14, 2020 naming the City and *Doe* defendants. ECF No. 12. The City was served approximately twenty-two months later. ECF No. 17. The time for amendment of Plaintiff's FAC has long passed, and Plaintiff has indicated that he will not seek to amend his complaint, including to name any individual defendants. ECF No. 36 at ¶ 5. Fact and expert discovery have closed. ECF No. 27 at 2.

For the period of incarceration relevant to this lawsuit,[2] Plaintiff was incarcerated from November 1, 2015 through June 16, 2020. Declaration of Lt. Mark Conti ("Conti Decl.") Ex. A (Plaintiff's Housing History Report). In the time period from May 6, 2018 through his release (772 days total), Plaintiff spent 643 days in County Jail 3 ("CJ3") in San Bruno, 72 days in County Jail 2 ("CJ2"), and 57 days in County Jail 4 ("CJ4"). Conti Decl. ¶ 3, Ex. A. During that time, Plaintiff was in disciplinary housing for 60 days. *Id.* ¶ 3.

Plaintiff's FAC challenges a single condition of confinement: lack of sunlight. FAC ¶¶ 8–9, 12–15. Plaintiff alleges he "was denied access to sun light completely." *Id.* ¶ 8. But, Plaintiff testified to his particular understanding of "access to sun light." Plaintiff testified in deposition that he does not consider sunlight coming through windows or louvers to count as access to sunlight. Declaration of S. Patrick Kelly in support of Defendants' Motion for Summary Judgment ("Kelly Decl.") Ex. A (Deposition of Cameron Vincent) ("Vincent Dep.") 54:11–55:6.

Plaintiff's FAC claims this alleged lack of sunlight caused a Vitamin D deficiency which caused depression, low testosterone, and osteoporosis. FAC ¶¶ 9, 14. Plaintiff confirmed in both

---

[2] Plaintiff has had multiple periods of incarceration; only the 2015 through 2020 period is relevant to this action.

deposition and discovery responses that the *only* physical, psychological, and emotional harms he claims were caused by the challenged condition of confinement were depression, low testosterone, and osteoporosis. Vincent Dep. 55:7–23; Kelly Decl. Ex. B (Plaintiff's Interrogatory Responses) at Responses to Interrogatory Nos. 1 and 2.[3]

## II.    Plaintiff's Medical History and Alleged Harms

### A.    There Is No Evidence that Lack of Sunlight Caused Plaintiff's Alleged Harms

First and foremost, Plaintiff admitted he has no evidence of causation. Defendant asked "Admit that YOU have no evidence that lack of sunlight caused Plaintiff to develop depression, low testosterone and osteoporosis," and Plaintiff responded, in responses drafted by counsel and verified by Plaintiff, without any objection whatsoever, "Admit." Kelly Decl. Ex. C (RFA Responses) at RFA No. 4. Defendant asked "Admit that YOU have no evidence that a Vitamin D deficiency caused Plaintiff's depression, low testosterone and osteoporosis," and Plaintiff responded, again without any objection, "Admit." *Id.* at RFA No. 5. These admissions alone should end the case.

Second, Plaintiff has no medical witnesses who can testify to medical causation. Plaintiff has disclosed no retained expert witnesses. Kelly Decl. Ex. G (Plaintiff's Expert Disclosure). Plaintiff did not name a single non-retained expert witness, instead referring to "**ALL MEDICAL PROVIDERS**" identified at the Plaintiff's deposition, without naming a single individual. *Id.* (emphasis original).[4] In response to interrogatories, Plaintiff did not name a single doctor, treater, or treatment received for the medical conditions alleged in his FAC. Kelly Decl. Ex. B at Responses to Interrogatory Nos. 3 and 4. Fact and expert discovery is now closed, and no doctor – treater, expert, or otherwise – has been deposed. Kelly Decl. ¶ 10. Indeed, Plaintiff was "unable to identify DOCUMENTS that support his contention that the CITY is responsible for his depression, low testosterone and osteoporosis." Kelly Decl. Ex. B at Response to Interrogatory No. 9; *accord* Responses to Interrogatory Nos. 12, 14.

---

[3] Plaintiff's Verification for the responses to Interrogatories and Requests for Admission is Exhibit D to the Kelly Declaration.

[4] Plaintiff was required to disclose "the identity of any witness" he may use as an expert. Fed. R. Civ. P. 26(a)(2)(A). Listing some broad category of individuals and requiring the City to comb through a deposition transcript in order to guess who Plaintiff may or may not call does not comply with the rule. *See, e.g., Bayes v. Biomet, Inc.*, 2020 WL 5848068, at *2 (E.D. Mo. Oct. 1, 2020) (excluding treating physician not identified by name in disclosure and citing similar cases).

After reviewing Plaintiff's medical records and the relevant literature, Dr. Laufer opined that "Vincent did not suffer any adverse effects due to his lack of sun exposure" and "there is no evidence that lack of sunlight caused Vincent to suffer from █████████████████████████████." Kelly Decl. Ex. E (Expert Report of Dr. Laufer) ("Laufer Rep.") at 5. Dr. Mayer, a noted epidemiologist, opined that "there is insufficient epidemiologic evidence to support the claim of a causal relationship between the [Condition of Confinement alleged] and the multiple health concerns alleged by the Plaintiff." Kelly Decl. Ex. F (Report of Dr. Mayer) ("Mayer Rep.") at 4. Dr. Mayer "encountered no empirical evidence that suggests or even hypothesizes how the [Conditions of Confinement alleged] are related to the health concerns raised by the Plaintiff." *Id.* He ultimately opined, "There is insufficient epidemiologic evidence to support the claim that the conditions of confinement are causal determinants for the physical and emotional concerns listed in the complaint." *Id.* at 6. Plaintiff has produced no contrary opinions.

While both Plaintiff's admissions and his failure to disclose any experts who can testify to medical causation are independently sufficient for summary judgment, the City lays out the ample evidence underlying its expert's opinions below.

**B.     Plaintiff Had a Single Vitamin D Test and Normal Calcium Levels**

Plaintiff ████████████████████████████████████████████████████████ ████████████ Pratt Decl. Ex. A at 048.[5] █████████████████████████████████ ████████. Pratt Decl. Ex. A at 046–47. Plaintiff's medical records █████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████. Laufer Rep. at 3; Pratt Decl. ¶ 5. █████████████████ ███████████████████████████████████. Laufer Rep. at 3; *accord* Pratt Decl. Ex. A at 051, 309 (██████████████████████████████████). Dr. Laufer points out that "health symptoms from low Vitamin D are due primarily to low serum calcium (*i.e.* low calcium in the blood)" █████████████████████████████████████████. Laufer Rep. at 3.

---

[5] For ease of reference, the City identifies the page of the excerpt from Plaintiff's medical records by the last three digits of the Bates number in the bottom right of the document.

Plaintiff claimed that all of the documents he had related to his incarceration, including any medical records, were lost. Vincent Dep. 14:20–15:6, 16:5–16, 18:23–20:8; *accord* Kelly Decl. Ex. B at Response to Interrogatory No. 9. Plaintiff did not produce any medical records – or indeed any documents whatsoever – in this action. Kelly Decl. ¶ 10.

**C.    Plaintiff Had a History of Depression Stemming Back to at Least 2007 that Improved over Time in San Francisco County Jail**

Plaintiff was incarcerated on November 1, 2015; approximately three months later, ███████ ██████████████████████████████. Pratt Decl. Ex. A at 586. Plaintiff's medical records show ████████████████████████████████████████████ ██████████

████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ ████████ .

*Id.* After making this statement ████████████████████████████ ████████████████████████████████████████████████ ████████ . *Id.*; *accord* Vincent Dep. 85:11–24. The assessment by the clinician was that Plaintiff had "████████████████████████████." Pratt Decl. Ex. A at 586. In deposition, Plaintiff noted that his grandmother's death in 2007 and being in the hole in San Quentin for twelve months in 2010 had significantly caused his depression. Vincent Dep. 85:25–88:5. Rather than being related to or worsened by a lack of sunlight, Plaintiff testified that he "was depressed the whole time [he] was in jail." *Id.* 91:22–24. He also testified that he was stressed about the uncertainty of his criminal case and the distance from family and friends. *Id.* 93:17–25. Plaintiff also testified that the presence of COVID worsened his depression. Vincent Dep. 122:17–21.

Plaintiff was provided both antidepressants and regular talk therapy by Jail Behavioral Health Services (sometimes referred to as Jail Psychological Services). *Id.* 92:8–18. ██████████████ ██████████████████████████████████████████████

_____

[6] In deposition, Plaintiff noted that his mother is, in fact, still alive. Vincent Dep. 88:5–18.



██████████████████████████████████████████████████ Pratt Decl. Ex. A at 040. ███████ ██████████████████████████████. *Id.* Prior to that time, Plaintiff repeatedly told the person visiting him from Jail Behavioral Health Services that he was "████." Laufer Rep. at 5; *accord* Vincent Dep. 92:20–93:7. Thus, despite the nascent COVID pandemic worsening his depression, Plaintiff ███████████████████████████████ and told his provider that ██████████████████████████. Having reviewed his records, Dr. Laufer opined "Vincent's ████████████████████████████████████ ████████." Laufer Rep. at 5.

**D.    There Is No Medical Evidence Plaintiff Has or Had Osteoporosis**

Plaintiff testified that he does not know of any symptoms of osteoporosis that he has had and that he has never had a bone density test. Vincent Dep. 76:24–77:12. He has never broken any bones. *Id.* at 29:4–5. He confirmed his Jail Health Services records from 2004 that he did not, at that time, have osteoporosis (███████████████████████████████). *Id.* at 77:13–78:7. He did not request care or treatment for osteoporosis. *Id.* at 81:25–82:8. He does not recall what his diagnosis was with relation to osteoporosis or which doctor allegedly diagnosed him with osteoporosis, and he has no documents supporting a diagnosis. *Id.* at 59:8–60:17.[7]

Plaintiff's medical records show ████████████████. Laufer Rep. at 3; Pratt Decl. ¶ 5. There is ███████████████████████████. Laufer Rep. at 3. Plaintiff ████████ ████████████████████████. Laufer Rep. at 4; *accord* Pratt Decl. Ex. A at 167. ████████ ██████████████████████. Pratt Decl. ¶ 5. Plaintiff had ████████████████ ████████. Pratt Decl. Ex. A at 051, 309. Dr. Laufer opined that "████████████████████ ████████████████████████████████████████████ insufficient evidence to diagnose Vincent with ████████." Laufer Rep. at 4. Dr. Pratt noted that in her review of Plaintiff's ████████████████████████████ ████████████████████████████████

---

[7] Plaintiff cannot testify to what some unidentified medical professional may have told him. Such testimony would be inadmissible hearsay and expert testimony without foundation.

████████. Pratt Decl. ¶ 5. Had Plaintiff been tested for ██████████████████████████

████████████████████, Dr. Pratt would expect that to appear in his medical records. *Id.* ¶ 3.

### E.    There Is No Medical Evidence Plaintiff Has or Had Low Testosterone

Plaintiff does not recall the specific diagnosis he received for low testosterone, does not recall the doctor who diagnosed him, and has no documents to support that he was ever diagnosed with low testosterone. Vincent Dep. 61:24–62:5. He does not know what symptoms he had of low testosterone. *Id.* at 82:9–15, 82:25–83:3. Plaintiff has no documents supporting that any tests were run for low testosterone, was not on supplements, never sought treatment for low testosterone, and never requested care from jail medical for low testosterone. *Id.* 83:12–19, 84:4–6.

Dr. Laufer's records review showed that Plaintiff's "medical records show no ████████████████ ████████" and "show no ██████████████████████████████████." Laufer Rep. at 4. In addition, Dr. Laufer is "unaware of any medical link between Vitamin D and low testosterone." *Id*. Dr. Pratt noted that in her review of Plaintiff's records ████████████████████████████████ ███████████████████████████████████████████████ ████████████████████████. Pratt Decl. ¶ 5. Had Plaintiff been tested for ████████████ ████████████████████████, Dr. Pratt would expect that to appear in his medical records. *Id.* ¶ 3.

### III.    Plaintiff Had Medically Sufficient Access to Light

Every cell in CJ3 has a window; for security reasons the window is striped with lines that provide a clear view of the landscape outside and tinted lines that obscure the landscape, yet still let in ambient light. *Brackens* Trial Transcript ("Tr.") 154:17–19, 155:15–18, 305:11–18, 475:8–11, Exs. 1156, 1159, 1172; *accord* Vincent Dep. 102:25–103:3.[8] The windows show the outdoor landscape and the passage of time. *Brackens* Tr. 154:17–19, 155:15–22, 233:12–17, 305:11–21, 473:13–474:6, 475:8–11. Plaintiff had additional access to sunlight in the gym through two large grates on the wall. *Id.* at 472:17–473:5, 1086:4–10, Ex. 1171.

---

[8] Transcripts and Exhibits from *Brackens* are compiled as Exhibit H to the Kelly Declaration.

In the CJ4 block where Plaintiff was housed, "the day room also has louvered windows with direct sunlight." Order Regarding Plaintiffs' Motion for Preliminary Injunction and Defendants' Motion to Dismiss at 9, *Norbert v. San Francisco Sheriff's Department*, No. 19-cv-2724-SK, ECF No. 110; *accord* Vincent Dep. 101:23–24.

While, as noted above, Plaintiff did not consider sunlight coming through a window to be sufficient, Dr. Laufer opined that "Vincent did not suffer any adverse effects due to his lack of sun exposure." Laufer Rep. at 5. In addition, he states that "Light from fluorescent and high-voltage bulbs generate light in frequencies sufficient to allow natural creation of Vitamin D3" and "Vitamin D3 obtained from milk, supplements or food is equivalent to that created by sunlight exposure." *Id.* at 3. Plaintiff has adduced no evidence to the contrary.

## LEGAL STANDARD

Summary judgment is "the ultimate screen" to eliminate "insubstantial lawsuits prior to trial." *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998). It is not "a procedural shortcut," but the "principal tool[] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Summary judgment is proper where discovery shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Material facts are those which affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* The moving party has the burden of pointing out any "absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325. The nonmoving party must then go beyond the pleadings and, by its own affidavits or discovery, set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). If the evidence in opposition is merely colorable, or is not sufficiently probative, summary judgment is appropriate. *See Anderson*, 477 U.S. at 249–50.

## ARGUMENT

**I.     Lacking Evidence of Causation of His Alleged Harms, Plaintiff's Fourteenth Amendment Claim Fails as a Matter of Law**

The Fourteenth Amendment prohibits conditions of confinement for pretrial inmates that "amount to punishment." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). "Not every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense" because pretrial confinement, "no matter how modern" the facility, will always result "in restricting the movement of a detainee in a manner in which he would not be restricted if he simply were free to walk the streets pending trial." *Id.* at 537. "[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or be independent of, the inherent discomforts of confinement." *Demery v. Arpaio*, 378 F.3d 1020, 1030 (9th Cir. 2004) (citing *Bell*, 441 U.S. at 537).

"[F]or a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee." *Norbert*, 10 F.4th at 928 (quoting *Demery*, 378 F.3d at 1029). Where a policy has no express intent to punish, it violates the Fourteenth Amendment only where it is not "rationally related to a legitimate nonpunitive government purpose" or "appear[s] excessive in relation to that purpose." *Bell*, 441 U.S. at 561.

In the *Norbert* action, the Ninth Circuit held "We need not and do not consider in this case the contours of any claimed right to direct sunlight not filtered through a window. That is because even assuming such a right is cognizable, the plaintiffs on this record did not come forward with evidence sufficient to demonstrate a causal connection between their claimed constitutional right and claimed harm." *Norbert*, 10 F.4th at 934.[9] The Ninth Circuit held that under the Fourteenth Amendment, "to show improper 'punishment' plaintiffs must again demonstrate that the challenged conditions produce a 'harm or disability.'" *Id.* at 934–35 (citing *Vazquez v. Cnty. of Kern*, 949 F.3d 1153, 1163 (9th Cir. 2020)); *accord Brackens* Order at 54. Unlike the Fourth Amendment, where an unconstitutional search is *per se* a violation leading to at least nominal damages, in the context of a Fourteenth Amendment

---

[9] While the *Brackens* Plaintiffs did eventually adduce evidence at trial, leading to this Court's order in that case, Plaintiff here has adduced no such evidence.

due process claim, causation of harm is an element of the claim itself. *Id.* In other words, without evidence of causation, Plaintiff cannot prove his claim and summary judgment should be entered in favor of the City.

Plaintiff's only challenged condition of confinement is lack of access to sunlight; indeed, it is the only condition of confinement even mentioned in the FAC. FAC ¶¶ 8–9, 12–15. At this late stage, with discovery closed, Plaintiff cannot add a new, unpled condition of confinement in order to defeat summary judgment. *Navajo Nation v. U.S. Forest Service*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court"); *Wasco Products, Inc. v. Southwall Tech. Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings.") (quoting *Fleming v. Lind-Waldock & Co.*, 922 F.2d 20, 24 (1st Cir. 1990)); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968–69 (9th Cir. 2006) (disallowing plaintiff from raising new ADA allegations only vaguely referenced in the complaint in opposition to summary judgment).

Plaintiff's FAC, testimony, and discovery responses make clear that the only three harms Plaintiff is claiming were caused by lack of sunlight (the sole condition of confinement alleged) are: 1) low testosterone, 2) osteoporosis, and 3) depression. FAC ¶¶ 9, 14; Vincent Dep. 55:7–23; Kelly Decl. Ex. B at Responses to Interrogatory Nos. 1 and 2. As with conditions of confinement, summary judgment is too late for Plaintiff to seek to amend his FAC *sub rosa* to allege further harms. *See Navajo Nation*, 535 F.3d at 1080 (citing cases).

Thus, if Plaintiff cannot prove that lack of sunlight caused his alleged low testosterone, osteoporosis, and depression, he cannot state a Fourteenth Amendment claim. This is a critical difference between this case and the *Brackens* case; in *Brackens*, after the Ninth Circuit's decision in *Norbert*, cited above, Plaintiffs adduced evidence of causation including expert testimony. *Brackens* Order at 55–56. Despite having the benefit of the *Norbert* opinion from the Ninth Circuit, Plaintiff here neither identified nor produced any evidence of causation in this matter (and, based on Plaintiff's admissions, such evidence cannot be introduced).

**A.     Having Admitted He Has No Evidence of Causation, Plaintiff's Claim Fails**

In this case, Plaintiff made the unqualified admission that he has no evidence that either lack of sunlight or a Vitamin D deficiency caused his alleged low testosterone, osteoporosis, or depression. Kelly Decl. Ex. C at Response to RFA Nos. 4, 5. "Rule 36 makes plain that the admitted fact is no longer subject to dispute." *Inland Empire Waterkeeper v. Corona Clay Co.*, 17 F.4th 825, 837 (9th Cir. 2021). The Ninth Circuit has made clear that "[f]or Rule 36 to be effective, 'litigants must be able to rely on the fact that matters admitted will not later be subject to challenge.'" *Id.* (quoting *In re Carney*, 238 F.3d 415, 419 (5th Cir. 2001)). "Evidence inconsistent with a Rule 36 admission is properly excluded." *999 v. C.I.T. Corp.*, 776 F.2d 866, 869–70 (9th Cir. 1985)); *accord Warren v. Cybulski*, 556 B.R. 429, 435 (N.D. Cal. 2016) (Once a matter has been admitted "the court may not consider evidence that is inconsistent with the admission") (citation omitted).

Plaintiff thus can admit no evidence that either lack of sunlight – the only condition of confinement challenged – or lack of Vitamin D caused his alleged low testosterone, osteoporosis, or depression. This lack of evidence is fatal to Plaintiff's Fourteenth Amendment claim. *Norbert*, 10 F.4th at 934–35.

**B.     Plaintiff Has No Admissible Evidence on Medical Causation**

Plaintiff has retained no expert witnesses. Kelly Decl. Ex. G (Expert Disclosure). Fact and expert discovery are now closed, and no doctor – including any treating physician or expert witness – has been deposed. Kelly Decl. ¶ 10.

Federal Rule of Evidence 701 limits opinion testimony from a lay witness to opinions "rationally based on the witness's perception" and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Federal courts agree that lay witnesses may not provide an opinion that "requires specialized medical knowledge." *United States v. York*, 600 F.3d 347, 361 (5th Cir. 2010). Such testimony "is not the type of opinion that one could reach as a process of everyday reasoning." *Id.* Because "knowledge derived from previous professional experience falls squarely within the scope of Rule 702 and thus by definition outside of Rule 701," not even a lay witness who is a treating physician may testify to opinions regarding medical causation under

Rule 701. *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1215 (10th Cir. 2011) (quoting *United States v. Smith*, 640 F.3d 358, 365 (D.C. Cir. 2011) (citing Seventh and Second Circuit cases)).

Medical causation – particularly of complex issues such as low testosterone, osteoporosis, and depression – cannot be established with lay testimony. *See Asplundh Mfg. Div., a Div. of Asplundh Tree Expert Co. v. Benton Harbor Eng'g*, 57 F.3d 1190, 1207 (3d Cir. 1995) (reversing and ordering new trial where district court improperly permitted lay opinion as to the issue of causation). Determining which of Plaintiffs' alleged injuries were caused by the conditions of confinement at issue in this lawsuit would require the "specialized medical knowledge" of a medical expert. *See York*, 600 F.3d at 361 (holding testimony regarding the cause of bruises and the length of time it would take those bruises to develop required expert medical opinion); *see also Yamagiwa v. City of Half Moon Bay*, 2007 WL 831804, at *6 (N.D. Cal. Mar. 19, 2007) ("lay opinion is not definitive evidence of causation").

"[C]ausation must be founded upon expert testimony and cannot be inferred from the jury's consideration of the totality of the circumstances unless those circumstances include the requisite expert testimony on causation." *Cottle v. Superior Ct.*, 3 Cal. App. 4th 1367, 1385 (1992), *modified* (Mar. 20, 1992); *see also Stephen v. Ford Motor Co.*, 134 Cal. App. 4th 1363, 1373 (2005) ("where, as here, the complexity of the causation issue is beyond common experience, expert testimony is required to establish causation"). In *Cottle*, the California Court of Appeal affirmed the trial court's ruling precluding plaintiffs from testifying that their injuries were caused by exposure to substances. *Id.* at 1384–85, 1388–89. "The law is well settled that in a personal injury action causation must be proven within a reasonable medical probability based upon competent expert testimony. Mere possibility alone is insufficient to establish a prima facie case." *Id.* at 1384 (quoting *Jones v. Ortho Pharm. Corp.*, 163 Cal. App. 3d 396, 402–03 (1985) (granting nonsuit where plaintiff failed to produce expert testimony that development or aggravation or disease was caused by ingestion of the suspect drug)). The *Cottle* court held that in order to recover for physical injuries, plaintiffs would need to introduce competent medical evidence that the incident at issue caused their injuries. *See Cottle*, 3 Cal. App. 4th at 1385. Although this is a state court decision, Federal Rule of Evidence 701 limits lay opinion testimony for the same reasons as those stated in *Cottle*.

It is not simply causation of a condition that requires expert testimony; expert testimony is required for Plaintiff to establish that an alleged condition of confinement caused *aggravation* of an existing condition, such as depression. In *Walker v. Contra Costa Cnty.*, 2006 WL 3371438 (N.D. Cal. Nov. 21, 2006), it was undisputed that plaintiff suffered from heart disease, but the court precluded plaintiff from testifying that defendant's alleged discrimination exacerbated that condition, causing him harm. The court held: "Plaintiff's lay opinion testimony that he experienced an 'exacerbation of his physical health conditions and … psychological stress' as a result of Defendants' actions … is not testimony about an 'obvious causal relationship'" susceptible to lay opinion testimony and instead "is the subject of specialized medical knowledge." *Id*. at *9 The court distinguished the type of physical injury at hand from more straightforward "testimony about what caused a simple physical injury like a broken leg." *Id*. As in *Walker*, the causes of Plaintiff's depression – ███████████████████ ████████████████████ – are not immediately obvious like the cause of a broken leg.

Other courts reached the same outcome, sustaining objections to the plaintiffs' own testimonies as to medical causation under Rule 701. *See e.g., Dhillon v. Princess Cruise Lines, Ltd.*, 2022 WL 504560, at *3 (C.D. Cal. Feb. 18, 2022) (prohibiting lay testimony on cause of injury because "[u]ltimately, 'the alleged mechanisms of causation are beyond the experience of laypeople'" and cannot be established "absent such expert testimony"); *Hawes v. Pac. Gas & Elec. Co.*, 2018 WL 5270499, at *6 (C.D. Cal. June 25, 2018), report and recommendation adopted, 2018 WL 5270513 (C.D. Cal. Oct. 19, 2018), aff'd, 821 F. App'x 827 (9th Cir. 2020) ("Plaintiff is not a qualified expert in the medical field. Therefore, while his own statements may be used to establish his symptoms, to the extent they purport to establish the cause of Plaintiff's injuries, they are inadmissible lay opinion."); *Brown v. Johnson & Johnson*, 2019 WL 2577296, at *6 (E.D. Cal. June 24, 2019), report and recommendation adopted sub nom. *Brown v. Johnson & Johnson, Inc.*, 2019 WL 3943980 (E.D. Cal. Aug. 21, 2019).

In *Sanchez v. Master Prot., LP*, 2022 WL 2092995, at *2 (C.D. Cal. May 4, 2022), the Court held "Plaintiff cannot self-diagnose himself with—or testify as to the symptoms of—depression, anxiety, and insomnia" because "[s]uch testimony would stray too far into matters of 'scientific, technical, or other specialized knowledge' prohibited by Rule 701." Determining the nature, extent,

and cause of an injury requires the "specialized medical testimony knowledge" of a medical expert. *Burleson v. Samson*, 2007 WL 2688840, at *2 (E.D. Cal. Sept. 13, 2007) (plaintiff not allowed to "interpret or otherwise explain in medical or diagnostic terms the nature or extent of his injuries or the medical records"); *Lawson v. Lawson*, 2015 WL 5474763, at *3 (D. Nev. Sept. 17, 2015) (excluding lay witness testimony regarding medical diagnoses or causation).

Here Plaintiff has neither identified nor deposed any doctors – treaters, the City's experts, or otherwise – who can testify to the medical causation of the only three harms alleged: low testosterone, osteoporosis, and depression. Without this expert medical evidence, Plaintiff cannot prove the causation element of his constitutional claim, making summary judgment for the City necessary.

**C.    The Admissible Evidence Makes Clear Plaintiff Has No Evidence Showing a Lack of Sunlight Caused Plaintiff's Only Alleged Harms**

As detailed above, both Dr. Laufer and Dr. Mayer opined that there was no evidence lack of sunlight caused Plaintiff's only alleged harms (*i.e.*, low testosterone, osteoporosis, and depression). Laufer Rep. at 5; Mayer Rep. at 4, 6. Dr. Laufer further opined that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Laufer Rep. at 5.

These experts' opinions are fully supported by their review of Plaintiff's medical records. Dr. Laufer noted that there is no evidence from Plaintiff's medical records ▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Laufer Rep. at 3–4; *accord* Pratt Decl. ¶ 5. Plaintiff never sought treatment for either. Vincent Dep. 81:25–82:8, 83:12–19, 84:4–6. With regard to depression, Dr. Laufer noted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮. Laufer Rep. at 4–5; *accord* Pratt Decl. Ex. A at 586. Plaintiff's records show that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Pratt Decl. Ex. A at 586. ▮▮▮▮▮▮▮ is not lack of sunlight. Plaintiff also testified that his grandmother's death in 2007 and being in the hole in San Quentin for twelve months in 2010 had significantly caused his depression. Vincent Dep. 85:25–88:5. Events occurring five and eight years prior to the period of incarceration relevant to Plaintiff's suit have nothing to do with the alleged lack of sunlight in San Francisco County Jail. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

█████████████████████████████████████████████████████████████████████

██████████████████████ Pratt Decl. Ex. A at 040; Laufer Rep. at 5. If Plaintiff's depression was caused or somehow aggravated by a lack of sunlight, ████████████████████████████ ███████████████████████████████████ based on Plaintiff's medical records. Laufer Rep. at 5. Had Plaintiff reported symptoms about ██████████████████████████████ ███████████████████████████████████████████████████████████████████ ████████████████. Pratt Decl. ¶¶ 3, 5.

Further, it is indisputable that Plaintiff had access to sunlight through windows and louvers. *See* Section III, *supra* and citations therein. Plaintiff has adduced no evidence to show that *this* sunlight is insufficient, and, in fact, Dr. Laufer has opined that even the light given off by fluorescent lights and high-power lights would be sufficient for natural Vitamin D3 production. Laufer Rep. at 3.

In short, Plaintiff has admitted he has no evidence of causation. He has no doctor to testify to any medical evidence of causation. And, the medical evidence that does exist – the opinions of Dr. Laufer and Dr. Mayer based on the medical literature and Plaintiff's records – shows that a lack of sunlight did not cause any of the harms Plaintiff alleges (████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████). Plaintiff cannot prove the challenged condition of confinement caused him harm or disability, and thus his Fourteenth Amendment claim fails.[10]

**D.    The Evidence Shows This Case Is Completely Distinct from the *Brackens* Case**

In the *Brackens* case, the named Plaintiffs pointed to their medical records and adduced testimony (although this Court found some of that testimony to not be credible) of harms. *Brackens* Order at 27–35. Plaintiffs in *Brackens* also adduced the expert testimony of Charles Czeisler M.D., Ph.D. *Id.* at 41–44. Dr. Czeisler reviewed the named Plaintiffs' medical records and opined that "the

---

[10] Here the City is the only Defendant, so summary judgment to the City on causation for the due process claim would dispose of Plaintiff's *Monell* claim. Municipalities such as the City cannot be held liable unless Plaintiff proves an underlying constitutional violation. *Lockett v. Cnty. of Los Angeles*, 977 F.3d 737, 741 (9th Cir. 2020) ("*Monell* claims thus require a plaintiff to show an underlying constitutional violation."); *accord Yousefian v. City of Glendale*, 779 F.3d 1010, 1016 (9th Cir. 2015). Plaintiff's inability to prove causation is thus fatal to both his Fourteenth Amendment claim and his companion *Monell* claim.

CCSF's Mot. for Summary Judgment                    17                    n:\lit\li2022\230302\01712796.docx
Vincent v. CCSF, et al. 20-cv-03129-SK

deprivation of direct sunlight is a 'causal factor' in causing illnesses that Plaintiffs allege in the Complaint or are a 'contributing factor' or exacerbated illnesses that Plaintiffs already had." *Id.* at 43. The Court relied on this evidence in finding Plaintiffs had proved harm in *Brackens*. *Id.* at 55–56.

By contrast, in this case, as explained above, Plaintiff has not adduced expert testimony and has, in fact, ***admitted*** that he has no evidence of causation. That admission bars him from introducing such evidence, as any evidence of causation would contradict the admission. Plaintiff's medical records were not a subject of expert review or testimony in the *Brackens* action – nor would they be since he was not incarcerated and the injunctive relief at issue in *Brackens* would not benefit him. Here, the review of Plaintiff's records conducted in this action by Dr. Laufer showed that "Vincent did not suffer any adverse effects due to his lack of sun exposure" and "there is no evidence that lack of sunlight caused Vincent to suffer from ███████████████████████████████." Laufer Rep. at 5. Thus, the key issue in this action – whether a lack of sunlight caused the three specific harms Plaintiff claims to have suffered – was not actually litigated in the *Brackens* action, and would be subject to significant contrary evidence that the City had no reason (or ability, given its irrelevance) to introduce in *Brackens*. This case is thus completely distinct from *Brackens*, and any attempt by Plaintiff to invoke collateral estoppel would be improper. *See Syverson v. IBM*, 472 F.3d 1072, 1078, 1080–81 (9th Cir. 2007) (to invoke collateral estoppel the exact issue must have previously been litigated). In other words, this Court's finding that lack of direct sunlight caused harm to the named Plaintiffs in *Brackens* – with their different medical histories, records, and complaints – does not establish that harm was caused to Plaintiff here.

Even if Plaintiff were able to establish all the elements of collateral estoppel – which he cannot since the causation issue for Plaintiff's three claimed harms was not litigated in *Brackens* – the Court should still not allow him to collaterally estop the City from arguing the lack of evidence of harm *to Plaintiff here*. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) (where "the application of offensive estoppel would be unfair to a defendant, a trial judge … should not allow the use of offensive collateral estoppel"); *Eureka Fed. Sav. & Loan Ass'n v. Am. Cas. Co. of Reading, Pa.*, 873 F.2d 229, 234 (9th Cir. 1989) ("[I]t is inappropriate to apply collateral estoppel when its effect would be unfair.") Further, given the wide variety of litigation the City, as a government, is involved

in, precedent counsels against allowing nonmutual collateral estoppel against the City. *See United States v. Mendoza*, 464 U.S. 154 (1984) (disallowing nonmutual collateral estoppel against the United States); *Coeur D'Alene Tribe of Idaho v. Hammond*, 384 F.3d 675, 690 (9th Cir. 2004) (applying same logic to state agencies). In this case, a review of Plaintiff's medical records and the opinions of the City's experts shows that ████████████████████████████████████████████ ████████████████████████████████████████. Given the vast gap between Plaintiff's alleged harms and his medical records, it would be extremely unfair to the City to estop it from introducing evidence to show there was no causation of harm for Plaintiff here.

## II.    Punitive Damages Are Unavailable

The only defendant in this case is the City. Punitive damages are not available against the City. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Summary judgment should be granted to the City on Plaintiff's punitive damages claim.

## CONCLUSION

For the foregoing reasons, the Court should grant the City's summary judgment on all of Plaintiff's claims.

Dated:  October 23, 2023

DAVID CHIU
City Attorney
JAMES F. HANNAWALT
Acting Chief Trial Deputy
S. PATRICK KELLY
Deputy City Attorney


By: */s/ S. Patrick Kelly*
S. PATRICK KELLY

Attorneys for Defendant
CITY AND COUNTY OF SAN FRANCISCO